IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ANNA VAN LIER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-974 |
| | ) | |
| UNISYS CORPORATION, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff in this case filed her complaint initially in state court, alleging that defendant, her employer, committed constructive fraud and negligence by representing to plaintiff that she was not eligible for coverage under defendant's Long Term Disability Plan ("LTD Plan") when, in fact, she was eligible. Defendant removed the case to federal court on federal question and diversity grounds and also filed a motion to dismiss on the ground that plaintiff's Virginia common law constructive fraud and negligence claims are preempted by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001, *et seq*. Plaintiff opposed the motion to dismiss and filed a motion to remand. The matter was briefed, and following oral argument, an Order issued (i) finding that ERISA preempted plaintiff's state law claims and that diversity jurisdiction exists, (ii) denying plaintiff's motion to remand, and (iii) granting defendant's motion to dismiss the complaint with leave for plaintiff to amend the complaint with her ERISA claims. This Memorandum Opinion records and elucidates the reasons for denying plaintiff's motion to remand and granting defendant's motion to dismiss plaintiff's complaint with leave to amend.

1

**I.**

The pertinent facts may be succinctly stated.[1] Plaintiff, Anna Van Lier, a resident of Virginia, was employed by defendant, Unisys Corporation, a Delaware Corporation with its principal place of business in Pennsylvania that is engaged in the global business of providing information technology services to government entities and private companies.

Plaintiff commenced employment with defendant on September 10, 2012, as a Marketing Manager in defendant's Federal Systems Division. More than five years prior to her employment with defendant, plaintiff was diagnosed with Stage 2A breast cancer. Following surgery and treatment, a PET Scan in February 2008 confirmed she was cancer free. When plaintiff began employment with defendant, she had been cancer free for over four years.

On her first day of employment with defendant, plaintiff reported to defendant's office in Reston, Virginia, where she received, and was told to complete, various Human Resources documents. Included in these documents were applications to participate in benefits programs that defendant provided its employees. One of these plans was an LTD Plan, which defendant had insured by contract with Aetna Life Insurance. An employee could elect to register for the LTD Plan, but the employee would be responsible for the premiums for coverage.

At the time, plaintiff did not elect the plan to register for the LTD Plan, but on or about October 25, 2012, during plaintiff's first available open enrollment period, plaintiff telephoned Donna Brown, defendant's Global Director of Benefits, who is responsible for managing defendant's benefits programs. In light of her history of cancer, plaintiff was unsure if she would be eligible for coverage under the LTD Plan. In the course of her telephone conversation with Brown, plaintiff inquired of Brown whether plaintiff would be eligible for LTD coverage,

---

[1] Because this is a threshold motion, the facts are taken as alleged in the complaint. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.,* 213 F.3d 175, 180 (4th Cir. 2000).

disclosing to Brown her cancer history and explaining that she had been cancer free for over four years. Brown responded to plaintiff's eligibility query by telling plaintiff that Aetna would not likely approve her because of her pre-existing conditions. Brown asked plaintiff rhetorically why she would want to pay premiums when she would not receive any benefit from the plan. Contrary to Brown's representation, however, plaintiff was eligible at that time for the LTD Plan. In reliance on Brown's representation and recommendation, plaintiff did not sign up for the LTD Plan, although she did sign up for all other benefits programs offered by defendant.

Thereafter, in January 2013, plaintiff learned her breast cancer had returned and spread to her brain, lungs, liver, and bones. As a result, plaintiff became unable to work a five-day work week. Beginning February 8, 2013, plaintiff worked three days and was in treatment two days each week. Plaintiff continued to follow this schedule for several months.

On July 11, 2013, plaintiff met with her supervisor, Laura Osbursen, the director of Benefits and Human Resources, Beth Cironi, and the Vice President of Human Resources, Lee Stratten, about going on Short Term Disability full time. During the meeting, plaintiff recounted her conversation with Brown. Stratten told plaintiff that Brown's representations were incorrect and that plaintiff had indeed been eligible for the LTD Plan at the time she made her initial inquiry. But Stratten also informed plaintiff that, because of plaintiff's recent diagnosis, she was no longer eligible for the LTD Plan given the plan's pre-existing condition exclusion clause. After the meeting, Osbursen provided plaintiff with a copy of the Summary Plan Description for defendant's Flexible Benefits Program, which described the LTD Plan but did not mention the pre-existing condition exclusion clause.

In October 2013, plaintiff returned to work full time, but was unable to work more than two weeks before returning to Short Term Disability status. Thereafter, on March 11, 2014,

3

Aetna sent plaintiff a letter stating that plaintiff met the definition of disability under the LTD Plan. On March 28, 2014, Aetna sent plaintiff a revised letter stating that she would not receive LTD benefits because the information Aetna received from defendant indicated that plaintiff did not elect LTD coverage.

Plaintiff filed a complaint against defendant in the Circuit Court for Fairfax County, Virginia, on July 9, 2015, asserting two claims for relief: (i) constructive fraud and (ii) negligence. With respect to her constructive fraud claim, plaintiff alleges that defendant, by its agent and employee Brown, made a false representation of material fact, innocently or negligently, that plaintiff was not eligible for coverage under the LTD Plan because of her history of cancer. With respect to her negligence claim, plaintiff alleges that Brown, while acting within the scope of her employment, was negligent in making false statements to plaintiff about her eligibility for long term disability insurance coverage. Plaintiff claims that, as a result of Brown's misrepresentation and negligence, she lost the protection of the LTD Plan in the amount of $3,500 per month in non-taxable income, which would have continued to accrue for as long as plaintiff remains disabled.

On July 30, 2015, defendant removed this case to the United States District Court for the Eastern District of Virginia. Defendant then promptly filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., on the ground that plaintiff's Virginia common law claims are preempted by ERISA. Plaintiff opposed this motion to dismiss and moved to remand the case to state court.

## II.

Analysis properly begins by considering whether this case should be remanded to state court. Federal law allows for removal of "any civil action brought in a State court of which the

district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The party who removed the action to federal court "bears the burden of demonstrating that removal jurisdiction is proper." *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006). Federal courts have original jurisdiction over two types of cases: (i) those involving citizens of different states where the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332; and (ii) those involving federal questions pursuant to 28 U.S.C. § 1331. If the party who removed the case cannot demonstrate either basis for original jurisdiction, remand is required.

Here, defendant has demonstrated both diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction exists because (i) plaintiff's complaint prays for more than $2 million, easily clearing the $75,000 threshold and (ii) the parties are diverse, as plaintiff is a citizen of Virginia, and defendant is incorporated in Delaware and has its principal place of business in Pennsylvania.

The Supreme Court has recently held that a corporation's "principal place of business" is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Put differently, a corporation's "principal place of business" is its "nerve center," which "will typically be found at a corporation's headquarters." *Id.* To locate a corporation's "nerve center," the Fourth Circuit has looked to where a majority of corporate officers conduct their business. *Central West Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 104-05 (4th Cir. 2011) (finding it persuasive that seven of eight corporate officers, "including [the corporation's] chief executive officer, chief operating officer, chief financial officer, and general counsel and secretary" conducted business in Dearborn, Michigan). Other relevant factors include the location listed on

a corporation's corporate filing documents, *id.* at 107, and the location at which officers "make significant corporate decisions and set corporate policy," *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 172 (4th Cir. 2014).

Here, defendant's principal place of business is clearly Blue Bell, Pennsylvania. Not only is defendant's headquarters located there, but in addition to this, the majority of defendant's high-level, executive officers are based in Blue Bell. Defendant's leadership is composed of eleven individuals, seven of whom regularly make corporate decisions and set corporate policy from Blue Bell. Def. Ex. 2, Traczykiewica Decl. ¶¶ 4a-4j. The seven officers include the Chief Executive Officer, Chief Financial Officer, General Counsel and Secretary, and Treasurer. *See id.* Of the remaining four officers, only one is based full-time in Virginia; the others are "home based" and telecommute from Dallas, Chicago, and San Francisco. *See id.* Furthermore, defendant's Board of Directors holds regular meetings at its corporate headquarters in Blue Bell. *Id.* ¶ 4. Finally, defendant's corporate filings, including its Form 10-k, list Blue Bell as defendant's principal place of business. *Id.* ¶ 5. In short, defendant's "nerve center" is located in Blue Bell, and hence Pennsylvania is defendant's principal place of business. *Hertz*, 559 U.S. at 80.

What is more, plaintiff's only argument that defendant's principal place of business is Virginia amounts to a bait and switch. Plaintiff clearly named "Unisys Corporation" as the defendant in the complaint, *see* Compl. ¶ 1, yet plaintiff argues that there is no diversity because "Unisys Federal Systems," a division of Unisys Corporation, conducts business in Virginia, Pl.'s Mot. to Remand, at 2. As defendant correctly notes, plaintiff is stuck with the party she named in her complaint and may not change that party in an effort to evade federal jurisdiction. Thus, defendant correctly removed this case on the basis of diversity jurisdiction.

Even if diversity jurisdiction did not exist—which it clearly does—there is federal question jurisdiction because, as set forth in Part III, ERISA completely preempts plaintiff's claims for relief. Although the well-pleaded complaint rule generally disallows removal based on an affirmative defense,[2] the Supreme Court has made clear that "'when a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed" because the claim "even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). And particularly relevant to this case, "[t]he Supreme Court has determined that ERISA's civil enforcement provision, § 502(a) (29 U.S.C. § 1132(a)), completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502." *Darcangelo v. Verizon Commc'ns*, 292 F.3d 181, 187 (4th Cir. 2003) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

### III.

Analysis next properly considers whether defendant's motion to dismiss should be granted on the ground that ERISA preempts the two state claims in plaintiff's complaint. A claim should be dismissed on a 12(b)(6) motion if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 558 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dismissal under Rule 12(b)(6) is appropriate where a complaint contains little more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet v. Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 677-78.

---

[2] *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908).

Defendant argues that plaintiff's state law claims are preempted under two theories of preemption: (i) that Section 514(a) of ERISA preempts the state law claims under the doctrine of conflict preemption and (ii) that Section 502(a) of ERISA preempts the state law claims under the doctrine of complete preemption. Each theory is separately addressed.

### A.

Defendant first argues that Section 514(a) of ERISA preempts plaintiff's two state-law claims under the doctrine of conflict preemption. Section 514(a) provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). Here, it is undisputed that there is an employee benefit plan—the LTD Plan—and that plaintiff's claims are lodged under state law.[3] The question is whether the claims "relate to" the plan. *Id.*

The Supreme Court has held that a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan" that is not "too tenuous, remote, or peripheral." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 100 n.21 (1983). The Fourth Circuit has further explained that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans ... 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *District of Columbia v. Greater Washington Bd. Of Trade*, 506 U.S. 125, 129-30 (1992) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Importantly, parties cannot "avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims." *Wilmington Shipping Co. v.*

---

[3] *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as one that provides employees with, *inter alia*, "medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, *disability*, [or] death") (emphasis added); *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996) (holding that "'[s]tate law' includes both statutory and common law") (quoting 29 U.S.C. § 1144(c)(1)).

*New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)). Of particular relevance here, "ERISA preemption is commonly understood to apply to state common law claims that an ERISA fiduciary misrepresented the nature or availability of retirement benefits, or failed to provide enough information to permit the [participant] to make an intelligent retirement decision." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001).

Here, ERISA preempts plaintiff's state law claims because those claims turn on Brown's alleged misrepresentations regarding plaintiff's eligibility for benefits under the LTD Plan. Indeed, plaintiff's claims would not exist but for the LTD Plan. The Fourth Circuit's decision in *Griggs v. E.I. DuPont de Nemours & Co.* is dispositive here. 237 F.3d at 378. There the Fourth Circuit held that "[w]hen a cause of action under state law is 'premised on' the existence of an employee benefit plan … ERISA preemption will apply." *Id.* (quoting *Ingersoll-Rand*, 498 U.S. at 140). *Griggs* involved a plaintiff who originally sought relief in state court, alleging a negligent misrepresentation regarding the limitations on a lump sum rollover of a particular pension benefit. *Id.* at 375. The *Griggs* plaintiff relied on the misrepresentation, retiring early to his financial detriment, and the Fourth Circuit held that "[t]his claim ha[d] a sufficient 'connection with or reference to' [defendant's] pension plan to warrant preemption" because "ERISA [generally] preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *Id.* at 375, 378, 379 (quoting *Shaw*, 463 U.S. at 97). The same

is true here; plaintiff's claims manifestly have a "connection with or reference to" the LTD Plan, and therefore preemption is appropriate under *Griggs*. *Id*. at 377.[4]

Plaintiff attempts to distinguish *Griggs* from the present case by noting that the *Griggs* defendant failed to inform the plaintiff of the limitation on the rollover, causing the plaintiff to participate in the particular benefit, whereas here defendant's agent allegedly made an affirmative misrepresentation, causing plaintiff to refrain from participating in the particular benefit. In other words, plaintiff insists the difference between an act and omission is relevant to the preemption analysis. From this starting point, plaintiff concludes that, unlike in *Griggs*, the alleged misrepresentations in the present case *did not* concern "the existence of benefits under an employee benefit plan," *Griggs*, 237 F.3d at 378; rather, defendant's alleged misrepresentations addressed plaintiff's *eligibility* for the LTD plan.

Plaintiff's argument that *Griggs* is distinguishable fails because plaintiff relies on a distinction that makes no difference.[5] Indeed, the Fourth Circuit in *Griggs* characterized the misrepresentations as relating to the plaintiff's *eligibility* for benefits. *Griggs*, 237 F.3d at 379 ("The factual essence of [plaintiff's] claim is that [defendant] did not provide any information about the general *eligibility* limitations on a lump sum rollover of the [benefit]... .") (emphasis

---

[4] The Fourth Circuit and courts in this district have consistently held that ERISA preempts state law claims premised on similar allegations. *See, e.g., Wilmington Shipping Co.*, 496 F.3d 32 (4th Cir. 2007) (finding state-law claims for negligent misrepresentation and constructive fraud to be preempted); *Aliff v. BP Am., Inc.*, 26 F.3d 486, 488-89 (4th Cir. 1994) (per curiam) (deeming claims preempted when based on allegations that, but for employer's misrepresentations regarding job security and severance packages, employees would have relocated to other jobs); *Searls v. Sandia Corp.*, 50 F. Supp. 3d 737, 742-46 (E.D. Va. 2014) (holding that Virginia law claims for fraudulent inducement and negligence based on employer's alleged statements concerning the availability of pension benefit payments were preempted under ERISA); *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 657-58 (E.D. Va. 2006) (finding state-law fraud claim arising from "oral representations concerning contributions" to an ERISA-covered plan preempted).

[5] Similarly, the cases cited in n.11 are not distinguishable.

added). Moreover, the Fourth Circuit in *Griggs* cited several cases from other circuits that stand for the proposition that "ERISA preemption ... [applies] to state common law claims that an ERISA fiduciary misrepresented the nature or *availability* of retirement benefits." *Griggs*, 237 F.3d at 378 (emphasis added).[6] Thus, contrary to plaintiff's contention, *Griggs* is directly on point here.

Plaintiff further contends that *Coyne & Delany Co. v. Selman*—not *Griggs*—is the controlling Fourth Circuit precedent. *See* 98 F.3d 1457 (4th Cir. 1996). This argument also fails. *Coyne* involved a "garden-variety malpractice claim asserted against the defendants in their (non-fiduciary) capacities as insurance professionals." *Id.* The *Coyne* defendants had designed a group health insurance plan, and plaintiff brought a state law claim "charg[ing] that the defendants did not provide the product [plaintiff] ordered." *Id.* at 1464. The Fourth Circuit held in *Coyne* that ERISA did not preempt the claim because "Congress did not intend to preempt 'traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA plan entities,' including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Id.* at 1469 (quoting *Custer v. Sweeney*, 89 F.3d at 1167).

Contrary to plaintiff's contention, *Coyne* does not control here. The alleged misconduct in that case did not involve an existing ERISA plan and was not committed by traditional ERISA entities, but by third-party, non-fiduciary insurance agents. *Id.* at 1457. Moreover, here, plaintiff's claims do not fit the Fourth Circuit's description in *Coyne* of non-preempted claims because plaintiff's claims *do* implicate the relations among traditional ERISA plan entities.

---

[6] *See, e.g.*, *Muse v. Int'l Bus. Machs. Corp.*, 103 F.3d 490, 493 (6th Cir. 1996) (concluding that ERISA preempted claim that plaintiffs "would have chosen to participate in the superior benefit plan had [defendant] not negligently or intentionally misrepresented to [them] that no further early retirement plans would be offered"); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994) (same); *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 756-57 (5th Cir. 1990) (same).

Specifically, the purported misrepresentation at issue in this case was allegedly made by an employer (and plan fiduciary) in the course of conveying the terms and conditions of an ERISA plan to an employee who was eligible for that ERISA plan. Thus, *Coyne* is inapposite.

In sum, Section 514(a) of ERISA preempts plaintiff's state law claims of constructive fraud and negligence under the doctrine of conflict preemption because these claims implicate an ERISA plan and refer to an alleged misrepresentation made by an ERISA fiduciary to an employee eligible for the ERISA plan.

**B.**

Plaintiff's claims are preempted not only under the doctrine of conflict preemption but also under the doctrine of complete preemption. Complete preemption analysis turns on ERISA's civil enforcement provision, Section 502(a), 29 U.S.C. § 1132(a). Section 502(a) allows a "participant or beneficiary" to bring a civil action, *inter alia*, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits of the plan" and "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a). As the Fourth Circuit has made clear, ERISA "completely preempts state laws that come within its scope and converts these state laws into federal claims under [Section] 502." *Darcangelo*, 292 F.3d at 187 (citing *Metro Life Ins. v. Taylor*, 481 U.S. 58, 65-66 (1987)). A state law comes within the scope of ERISA if it provides "alternative enforcement mechanisms for claims that are actually ERISA claims," that is, if the claims "could be brought as an enforcement action under [Section] 502." *Id.* at 190-91.

Just as *Griggs* controlled the conflict preemption analysis, *Griggs* also controls the complete preemption analysis. Although the Fourth Circuit in *Griggs* did not explicitly acknowledge that the state claims in that case where completely preempted, the Fourth Circuit in

a subsequent opinion later described *Griggs* in terms of complete preemption. Specifically, the Fourth Circuit in *Darcangelo* described *Griggs* as holding that "the state law claims [were] preempted as alternative enforcement mechanisms." *Id.* at 191 (citing *Griggs*, 237 F.3d at 377-79). The Fourth Circuit in *Griggs* determined that, under ERISA, an employer conveying information to participants and beneficiaries about a welfare-benefits plan "ha[s] a fiduciary obligation not to misinform employees through material misrepresentations." *Griggs*, 237 F.3d at 380. Because Section 502(a) allows a plaintiff to enforce this fiduciary duty, ERISA completely preempts state law claims that provide alternative means of enforcement. *See Darcangelo*, 292 F.3d at 191.

Here, plaintiff's claims are completely preempted as alternative enforcement mechanisms for relief that is otherwise recoverable under ERISA Section 502(a). Although plaintiff frames her claims as seeking "compensatory" damages and other "non-economic damages," the essence of the relief she seeks is the value of the benefits she allegedly would have received under the LTD Plan had she not been misled by defendant. Specifically, plaintiff seeks damages in the amount of "$3500.00 per month for so long as she is disabled," in addition to other non-economic damages and attorney's fees. Compl., Prayer for Relief. This monthly amount is precisely the monthly benefit plaintiff would have received from the LTD Plan had she enrolled in the plan.[7] Plaintiff's claims are functionally equivalent to a breach-of-fiduciary-duty claim under ERISA, and are therefore preempted by Section 502(a).

---

[7] *Id.* at ¶ 40 (alleging that plaintiff "lost the protection of the LTD insurance policy and $3,500 per month in income").

Plaintiff contends that ERISA does not completely preempt her state claims because she is not a "participant" as defined by ERISA,[8] and therefore cannot seek relief under Section 502(a). Specifically, plaintiff argues that, although she is a former employee, she is not eligible and may not become eligible to receive benefits from the LTD Plan because: (i) plaintiff did not elect to participate in the plan and (ii) plaintiff could not now become eligible because of the LTD Plan's preexisting condition exclusion clause.

Plaintiff is plainly mistaken. The Fourth Circuit has made clear that "'[w]hether an employee has standing as a 'participant' depends, not on whether [s]he is actually entitled to benefits, but on whether [s]he has a colorable claim that [s]he will prevail in a suit for benefits.'" *Davis v. Featherstone*, 97 F.3d 734, 737-38 (4th Cir. 1996) (quoting *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1129 (5th Cir. 1996)). Here, plaintiff clearly qualifies as a "participant" because she has a colorable claim. Moreover, plaintiff incorrectly tethers the test for "participant" to the wrong moment in time, arguing that, because she would not be eligible for the LTD Plan *now*, she is not a "participant." But the relevant inquiry is whether plaintiff was a "participant" at the time of the alleged misrepresentations, not what her status is now. As defendant correctly notes, plaintiff *was* a "participant" at the time of the alleged misrepresentations because she was eligible for the LTD Plan. 29 U.S.C. § 1002(7). Plaintiff had not yet been diagnosed with recurring cancer, and therefore was not precluded from participating in the LTD Plan. Indeed, the crux of plaintiff's claims is that, but for defendant's alleged misrepresentations regarding her eligibility, she would have enrolled in the LTD Plan. Yet, for plaintiff to argue that she was not a "participant" at the time of the alleged misrepresentations is contrary to her entire legal theory. It

---

[8] ERISA defines a "participant" as an "employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... ." 29 U.S.C. § 1002(7).

is puzzling that plaintiff would make such an argument, given that defendant's alleged misrepresentation prevented her from participating in and "receiv[ing] a benefit" from "an employee benefit plan," which by definition makes plaintiff a participant. 29 U.S.C. § 1002(7).

Because there is complete preemption—not just conflict preemption—plaintiff's complaint is properly dismissed without prejudice so that plaintiff can amend her complaint to assert a claim under ERISA's civil enforcement provisions.[9]

## IV.

For the reasons stated here, and for the reasons stated from the bench, plaintiff's motion to remand is denied, and defendant's motion to dismiss plaintiff's original complaint is granted without prejudice.

An appropriate Order has already issued.

Alexandria, Virginia
October 22, 2015

T. S. Ellis, III
United States District Judge

---

[9] *See, e.g., Rollins v. Kjellstrom & Lee, Inc.*, No. 3:15cv66, 2015 WL 2354496, at *8 (E.D. Va. May 15, 2015) (dismissing state-law claims as preempted by ERISA, but granting leave to amend "to comply with the ERISA enforcement statutes"); *Fanney v. Trigon Ins. Co.*, 11 F. Supp. 2d 829, 833 (E.D. Va. 1998) (declining to "construe" a state-law claim "as an action pursuant to ERISA," and instead granting plaintiff "leave to amend her complaint to state a cause of action for relief under ERISA").